UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| EMMA MORRIS, WIFE OF/AND<br>CHARLES MORRIS | CIVIL ACTION |
| VERSUS | NO:   08-4247 |
| LIBERTY MUTUAL INSURANCE<br>COMPANY, ET AL. | SECTION: "C" (5) |

### ORDER AND REASONS

Before the Court are Defendant's Motions For Partial Summary Judgment. (Rec. Docs. 49 & 50). The Plaintiffs, Emma Morris and Charles Morris (now deceased), oppose these Motions. (Rec. Docs. 63 & 75). The Motions are before the Court on the briefs, without oral argument. Having reviewed the record, memoranda of counsel and the applicable law, the Motions are GRANTED for the following reasons.

### I. BACKGROUND

On February 16, 2008, Plaintiff, Charles Morris, was involved in a three-car accident, which caused him significant injuries. (Rec. Doc. 1 at 3). Plaintiff recovered $80,000 from the other parties' insurance carriers and also submitted an uninsured motorist ("UM") claim to his own carrier, Defendant, Liberty Mutual Insurance Company ("Liberty Mutual"). (Rec. Doc. 63 at 1). Defendant rejected Plaintiffs' claims for non-economic damages on the grounds that Mr. Morris selected economic-only UM coverage on two separate occasions in 2002 and 2007. *Id.* Defendant paid Mr. Morris for all of his submitted medical expenses. (Rec. Doc. 49-1 at 5). However, Defendant refused to pay for any of Plaintiffs' claims for lost wages because it felt that at the time of Mr. Morris' injuries he had no intention of returning to work. *Id.* Defendant based this conclusion

on the fact that at the time of the accident Mr. Morris was 74 and had not worked for over a year. *Id.*

In response to Defendant's claim denials, Plaintiffs assert that the UM waiver forms Defendant relies on are invalid because they were not signed by either of the Plaintiffs. (Rec. Doc. 63 at 2-4). Plaintiffs argue that in denying their non-economic damages and lost wages claims, the Defendant acted in bad faith, as defined by Louisiana Revised Statutes 22:658 and 22:1220, and are entitled to statutory penalties for such behavior. (Rec. Doc. 1 at 6-7). Defendant responds by arguing that they had a good faith reason to rely on the UM waiver forms in their file and that there was a legitimate dispute as to whether Mr. Morris would have returned to work if the accident had not occurred. (Rec. Doc. 49-1 at 1). As a result of these good faith reasons for denying Plaintiffs' claims, Defendant maintains that they are not liable for "bad faith" penalties. *Id.* at 2. Defendant has moved for partial summary judgment on the questions of whether Defendant is liable for "bad faith" in denying some of Plaintiffs' claims, (Rec. Doc. 49), and whether the UM waiver forms at question are valid (Rec. Doc. 50).

Defendant alleges that in 2002, Mr. Morris contacted them requesting to add a new vehicle to his policy. (Rec. Doc. 50-3 at 2). At that time Mr. Morris also inquired about the possibility of lowering his premium. *Id.* After consulting with one of their customer service representatives, Defendant asserts that Mr. Morris elected to change his UM coverage to economic-only coverage. *Id.* Defendant claims that Mr. Morris was faxed a UM waiver form, which he completed and returned to them. *Id.* The effect of this UM waiver was to reduce Mr. Morris' UM premium from $774 to $388. *Id.* Finally, Defendant asserts that in 2007, Mr. Morris substituted another vehicle and

added his wife to his policy and completed an additional UM waiver form, even though a new form was not required for those changes. *Id.* Defendant has provided copies of both UM waivers, *id.* at 4-5, as well as an expert handwriting report, which suggests to a virtual certainty that the signatures on the forms are from Mr. Morris. (Rec. Doc. 50-1 at 5).

While Mr. Morris remembered making the changes to his policy in 2002 and 2007, he did not remember receiving or completing any UM waiver forms. (Rec. Doc. 50-3 at 7-8). Mr. Morris acknowledged that the signatures on both forms did appear to be his signature, but he maintained that he had no recollection of signing the UM waiver forms. *Id.* Mr. Morris did not accuse Defendant of forging his signature, but rather suggested that someone in his office may have electronically signed the forms for him. *Id.*

## II. STANDARD OF REVIEW

Summary judgment is only proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247-48 (1986); *see also Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.,* 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of "informing the district

court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *See Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 871-73 (1990); *Donaghey v. Ocean Drilling & Exploration Co.,* 974 F.2d 646, 649 (5th Cir. 1992).

### III. **LAW AND ANALYSIS**

The Court will begins its analysis with the Defendant's Motion for Partial Summary Judgment regarding the question of the validity of the UM waiver forms. (Rec. Doc. 50). In this case the only dispute over the validity of the UM waiver forms is whether Mr. Morris signed the forms or not. If he did in fact sign the forms, then they would be valid under *Duncan v USAA Ins. Co.*, 950 So. 2d 544, 551 (La. 2006), and Defendant would be entitled to summary judgment on the question of their validity. *Id*. If he did not sign the forms, then they would be invalid, and summary judgment would not be proper. *Id.*

The Plaintiffs assert that they do not recall signing the forms and therefore the signatures must not be theirs. (Rec. Doc. 50-3 at 8). Mr. Morris specifically did not argue that Defendant forged his signature. *Id.* Rather he suggested that someone at his office might have electronically signed

the forms for him and returned them to Defendant. *Id.* Plaintiffs point to no evidence supporting this theory, or any other theory, of how Mr. Morris' signature appeared on the two UM waiver forms. Defendant does not dispute the fact that Mr. Morris did not remember signing the forms. As Defendant points out, after his accident Mr. Morris had difficulties with his memory, (Rec. Doc. 50-3 at 6), and did not remember signing any forms with Defendant, even ones that are undisputed, *id.* at 9. Defendant further provides the signed forms, (Rec. Doc. 50-3 at 4-5), and an expert opinion that indicates the signatures are virtually certain to be authentic, *id.* at 19. Under *Duncan*, once an insurer provides a properly completed and signed UM waiver form, the burden shifts to the insured to prove that they did not knowingly select lower coverage. *Duncan*, 950 So. 2d 544 at 552. Here Defendant produced the properly completed UM waiver forms and additionally provided sufficient evidence that the signatures on the forms were authentic. Plaintiffs have produced no evidence besides their unsubstantiated claims that they did not sign the forms. This entitles Defendant to a presumption that Plaintiffs' selection of economic-only UM coverage was knowing.

Plaintiffs argue that if they did sign a UM waiver form, they did not do so knowingly, because they signed the form at the instruction of a post-it note attached to the UM waiver form. (Rec. Doc. 63 at 6-8). Plaintiffs suggest that such a note is an invalid modification of the UM waiver form, which denied them a meaningful selection of UM coverage. *Id.* at 5. In support of this argument, Plaintiffs rely on *Oliver v. Ste. Marie*, 715 So. 2d 722 (La. App. 3rd Cir. 1998), which held that a UM waiver was invalid because an insurance agent instructed an insured to sign for her husband. *Id.* at 7.

This argument is unsound for two reasons. The first is that Plaintiffs' allegations regarding

5

any attached notes only relate to the 2007 waiver, which was legally unnecessary, since the 2002 UM waiver was still valid. *Wilkinson v. Louisiana Indemnity*, 682 So. 2d 1296, 1301 (La. App. 1st Cir. 1996) ("We hold that the formal addition of [a wife] as a named insured did not...requir[e] the execution of a separate UM selection / rejection form"). As a result, even if Plaintiffs' legal analysis was correct, the 2002 waiver would still remain in effect, as there is no suggestion that it would be invalidated by actions regarding the later UM waiver. Secondly, while Plaintiffs rely heavily on *Oliver,* it is clearly distinguishable from Plaintiffs' case. The court in *Oliver* was concerned with whether a wife had any authority to sign a UM waiver form for her husband. *Oliver*, 715 S. 2d 722 at 726. Here the Plaintiffs merely allege that a note was included with the UM waiver indicating where to sign. (Rec. Doc. 63 at 6-8). Such a note has nothing to do with the authority to sign a form for someone else. Consequently, *Oliver* is inapplicable to Plaintiffs' case. As the Plaintiffs themselves indicated, "failing any fraud or misconduct by the insurance agent, the plaintiffs are bound by the written rejection/selection of UM coverage." (Rec. Doc. 63 at 5 (quoting *Esteve v. U.S. Agencies,* 818 So. 2d 998 (La. App. 1st Cir. 2002)). Plaintiffs have failed to show that any possible inclusion of an explanatory note with a UM waiver form is fraud or misconduct and are therefore bound by the terms of the UM waiver forms.

    In conclusion, since the Plaintiffs have only provided unsubstantiated assertions that they do not recall signing the forms, they have not created a genuine issue of disputed fact regarding the validity of the UM waiver forms. *Batiste v. Island Records, Inc.*, 179 F.3d 217, 223 (5th Cir. 1999) ([plaintiff's] inability to remember signing [an agreement] is not sufficient to raise a material issue as to the validity of the agreements."). Furthermore, Plaintiffs' argument that, as a matter of law, the

inclusion of a post-it note invalidated the 2007 UM waiver form is unpersuasive. Therefore, as the Plaintiffs have not shown any fraud or misconduct, Defendant is entitled to summary judgment on the question of the validity of the UM waiver forms.

It follows from this conclusion that the Defendant is not liable for bad faith in denying Plaintiffs' non-economic damages claims, as it is not bad faith to rely on facially valid policy limitations in denying a claim. *Guillory v. Lee*, 16 So.3d 1104, 1126 (La. 6/26/09). As the Supreme Court of Louisiana held in *Guillory*:

> "In order to establish a cause of action for penalties and/or attorney fees and costs under La. R.S. 22:658, a claimant must show that (1) an insurer has received satisfactory proof of loss, (2) the insurer failed to tender payment within thirty days of receipt thereof, and (3) the insurer's failure to pay is arbitrary, capricious or without probable cause."

*Id.* All of Plaintiffs' arguments are directed at proving that Defendant failed to issue a payment after it received a valid proof of loss. (Rec. Doc. 75 at 3-6). Defendant maintains that it had probable cause to believe Mr. Morris had no intention of returning to work and therefore he was not entitled to any lost wages. (Rec. Doc. 49-1 at 5).

As interpreted by the Louisiana Supreme Court an insurer's failure to pay is only "arbitrary, capricious or without probable cause" if it is "vexatious" or in other words "is not based on a good-faith defense." *Guillory*, 16 So.3d 1104 at 1127. Plaintiffs do not dispute that Mr. Morris had not worked or looked for work for over a year at the time of his accident. (Rec. Doc. 49-1 at 5). This fact combined with Mr. Morris' age at the time of the accident gave Defendant a reasonable basis to challenge Plaintiffs' claims for future lost earnings. Accordingly, since there was a legitimate question whether Mr. Morris had any intention of returning to work, Defendant did not act in bad faith in denying Plaintiffs' claims for lost wages. *Guillory*, 16 So.3d 1104 at 1127 ("[S]tatutory

penalties [are] inappropriate when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense...bad faith should not be inferred from an insurer's failure to pay within the statutory time limits when such reasonable doubt exists.").

## IV. CONCLUSION

Accordingly,

IT IS ORDERED that Defendant's Motions for Summary Judgment (Rec. Docs. 49 & 50) are hereby GRANTED.

New Orleans, Louisiana, this 4th day of October, 2010.

_____
**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**