UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| EMMA MORRIS, WIFE OF/AND<br>CHARLES MORRIS | CIVIL ACTION |
| VERSUS | NO: 08-4247 |
| LIBERTY MUTUAL INSURANCE<br>COMPANY, ET AL. | SECTION: "C" (5) |

**ORDER AND REASONS**

Before the Court is Defendant's Motion In Limine to Exclude or Limit the Expert Testimony of Dr. Rice, Mr. Hegwood, and Dr. Bartholomew. (Rec. Doc. 91). Having considered the record, the memoranda of counsel, and the applicable law, the Motion is DENIED for the following reasons.

**I. BACKGROUND**

The facts of this case were summarized by this Court in a previous order. (Rec. Doc. 80). The relevant remaining facts are that Defendant alleges that the testimony of Plaintiffs' proposed expert witnesses Dr. Randy Rice, Dr. Harold Bartholomew and Mr. Barney Hegwood are inadmissable under Rule 702 of the Federal Rules of Evidence and the *Daubert/Kumho* line of cases.

**II. EXPERT WITNESS STANDARD**

Federal Rule of Evidence 702 governs the admissibility of expert testimony and reports. It states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Rule 702 was amended in 2000 to reflect the United States Supreme Court's

decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). The *Daubert* decision changed the criteria for the admissibility of expert testimony and charged trial courts to act as "gate-keepers" to ensure that the proffered testimony is both relevant and reliable. *Daubert*, 509 U.S. at 589. In *Kumho Tire*, the Supreme Court held that the relevant and reliable standard announced in *Daubert* for scientific expert testimony applied to all types of expert testimony. *Kumho Tire*, 526 U.S. at 147.

In *Daubert*, the Supreme Court created a two-prong test for trial judges to determine the admissibility of expert testimony. To admit expert testimony, a court "must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to: (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592. both prongs of the *Daubert* test must be satisfied before the proffered expert testimony may be admitted. *Id.* at 595. This analysis "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.*

Thus, the first prong of the *Daubert* test focuses on whether the expert testimony is based on a reliable methodology. In determining an expert's reliability, the court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595. Several factors which may be considered in determining the soundness of the scientific methodology include: (1) whether the theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error and the existence and maintenance of standards; and (4) whether the theory or technique used has been generally accepted. *Id.* at 593-94. However, these factors compose a nonexclusive, flexible test to ascertain the validity or reliability of the methodology the expert employed. *Kumho Tire*, 526 U.S.

at 144. The applicability of each factor depends on the particular facts of the case. *Id.*

The second prong of the *Daubert* test, whether the proposed testimony will assist the trier of fact to understand or determine a fact in issue, goes primarily to the issue of relevancy. *Daubert*, 509 U.S. at 591. *Daubert* described this examination as a question of whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute. *Id.*, citing *United States v. Downing*, 753 F.2d 1224, 1242 (3rd Cir. 1985). As noted in *Cunningham v. Bienfang*, 2002 WL 31553976 (N.D.Tex. Nov. 15, 2002), Federal Rule of Evidence 401 defines "relevant evidence" as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

It is important to note that when expert testimony or reports are challenged under *Daubert*, the Court's role as a gatekeeper does not replace either the traditional adversary system, or the jury's place within the system. *Scordill v. Louisville Ladder Group, L.L.C.*, 2003 WL 22427981, at *3 (E.D.La. October 24, 2003). As the *Daubert* court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. As a general rule, questions relating to the bases and sources of an expert's opinion rather than its admissibility should be left for the jury's consideration. *United States v. 14.38 Acres of Land, More or Less S. in County, Miss.* 80 F.3d 1074, 1077 (5th Cir. 1996) (citing *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

### III. ANALYSIS

*A. Dr. Randy Rice*

Defendant objects to the proposed testimony of Dr. Rice because Defendant claims the

3

testimony is not the product of reliable principles and methods. (Rec. Doc. 91-1 at 5). Specifically Defendant argues that because Dr. Rice failed to use the Bureau of Labor Statistics' worklife expectancy tables, he failed to follow accepted methodology in the calculation of lost wages. *Id.* Plaintiffs respond by pointing out that Dr. Rice calculated Mr. Morris' remaining worklife based on Mr. Morris' own work plans and therefore his opinions are based on factual assertions that are best addressed at trial through cross-examination. (Rec. Doc. 98 at 2).

The Court agrees with Plaintiffs, since questions relating to the bases of an expert's opinion go to weight, not admissibility. *United States v. 14.38 Acres of Land, More or Less S. in County, Miss*. 80 F.3d 1074, 1077 (5th Cir. 1996). Here Defendant does not allege that Dr. Rice used an unreliable methodology to calculate lost wages, but rather that Dr. Rice used questionable assumptions about Mr. Morris' remaining worklife. Defendant's concerns about the use of Dr. Rice's assumptions can adequately be addressed on cross-examination.

### B. Mr. Barney Hegwood

Defendant alleges that Mr. Hegwood's testimony is inadmissible because it is entirely based on conjecture. (Rec. Doc. 91-1 at 7). Defendant further alleges that since Mr. Hegwood's testimony is entirely based on speculation, his testimony will not assist the trier of fact. *Id.* Specifically, Defendant points to the fact that Mr. Hegwood has stated in his report that without a functional capacity evaluation ("FCE") of Mr. Morris, he could not reach any definitive conclusions regarding Mr. Morris' vocational opportunities. *Id.*

In the absence of a FCE, Mr. Hegwood proposes to testify to three alternative vocational scenarios for Mr. Morris, based on the types of work that Mr. Morris is able to perform. Plaintiffs argues that Mr. Hegwood's testimony is not speculative but rather presents the jury with alternatives

that they can consider based on their determination of Mr. Morris' ability to perform various tasks. (Rec. Doc. 98 at 2-3). The Court agrees with Plaintiffs. Mr. Hegwood's proposed testimony is not speculative, but rather reaches three separate conclusions based on what type of work the jury determines that Mr. Morris will be able to perform. Such testimony will assist the trier of fact because it will provide a potential framework for the trier of fact to calculate damages for lost wages.

### C. Dr. Bradley Bartholomew

Dr. Bartholomew is Mr. Morris' treating physician and as such he does not need to submit an expert report in order to testify. Nevertheless, Defendant argues that Plaintiffs are attempting to circumvent the requirement of an expert report by having Dr. Bartholomew testify about Mr. Morris' potential future medical treatment. (Rec. Doc. 91-1 at 8). Defendants argue that such testimony about possible future medical treatment strays from the core of the physician's treatment and is not proper absent prior notice to Defendant and compliance with Rule 26. *Id.* at 9. Plaintiffs respond by pointing out that Dr. Bartholomew has consistently recommended that Mr. Morris undergo back surgery and that therefore potential back surgery is a true medical cost, which should be considered by the jury. (Rec. Doc. 98 at 5).

The Court agrees with Defendant that the use of a treating physician's testimony could potentially abuse Rule 26's requirement for an expert report. However, in this case Dr. Bartholomew has consistently recommended that Mr. Morris undergo back surgery. Since Dr. Bartholomew is Mr. Morris' treating physician and has consistently diagnosed Mr. Morris as a strong candidate for back surgery, he is not required to file an expert report under Rule 26. *Knorr v. Dillard's Store Servs. Inc.*, 2005 WL 2060905, at *3 (E.D.La. 2005) ("A written report is therefore not required for

a treating physician whose testimony and opinions derive from information learned during actual treatment of the patient, rather than from subsequent evaluation as a specially retained expert."). Moreover any prejudice to Defendant based on Dr. Bartholomew's testimony about future medical care is minimized by the fact that Dr. Bartholomew's recommendations have been in Mr. Morris' medical records for some time and are therefore not a surprise to Defendant.  However, Dr. Bartholomew apparently has not opined before as to the cost of the recommended back surgery. Therefore, this Court will not allow Dr. Bartholomew to testify about the cost of the recommended back surgery unless Plaintiffs disclose by noon tomorrow Dr. Bartholomew's estimate of the cost of any back surgery that he recommended as well as the basis for his estimate.  With the exception of the issue of costs, Dr. Bartholomew may only testify about the actual treatment he rendered to Mr. Morris and the opinions he derived directly from that treatment.

## IV. CONCLUSION

Accordingly,

IT IS ORDERED that Defendant's Motion In Limine is hereby DENIED. (Rec. Doc. 91).

IT FURTHER ORDERED that Dr. Bartholomew's testimony shall exclude any discussion of the costs of future back surgery unless Plaintiffs disclose by 12:00 p.m. February 1, 2011, Dr. Bartholomew's estimate of said costs and the basis for his estimate.

New Orleans, Louisiana, this 31st day of January, 2011.

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**